UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIANNE BRITO,<br>　　　　　　　*Plaintiff,*<br><br>-against-<br><br>ATA FREIGHT LINE, LTD., and CENGIZ J OGUZHAN,<br>　　　　　　　*Defendant*. | Index No.<br><br>**COMPLAINT** |

Plaintiff Julianne Brito ("Plaintiff" or "Ms. Brito"), by her undersigned attorney, Mohammed Gangat, Esq., complaining of defendant ATA Freight Line, LTD., states as follows:

## NATURE OF ACTION

1.　　This is an action to remedy violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and to recover damages arising from breach of an employment contract. Specifically, Plaintiff brings causes of action for (i) unpaid overtime under the FLSA; (ii) unpaid overtime under the NYLL; (iii) breach of contract arising out of failure to pay earned benefits; (iv) disability discrimination arising from employer's failure to accommodate request for medical leave; (v) and retaliatory termination.

2.　　The unlawful discrimination described herein was committed in violation of the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("NYSHRL") and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8- 101 et seq. ("NYCHRL").

## JURISDICTION AND VENUE

3.　　This Court has jurisdiction over this matter in that Plaintiff asserts claims under federal law and the remaining claims are part of the same case or controversy.

4. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. The Court has personal jurisdiction over the defendants in that this matter arises from their employment of the Plaintiff at a facility located in Nassau County, New York.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7. Plaintiff Julianne Brito ("Plaintiff" or "Ms. Brito") is an adult over the age of eighteen years old and presently residing in the State of New York.

8. Defendant ATA Freight Line, LTD ("ATA Freight" or the "Employer") is a New York corporation organized and existing under the laws of New York with its principal place of business in the State of New York, Nassau County with an address: 400 Garden City Plaza, Suite 404, 4th Floor, Garden City, NY 11530.

## THE EMPLOYMENT

9. ATA Freight was founded in 1996 in the State of New York.

10. The company provides logistics & freight forwarding services. In other words it manages shipping and transportation needs for commercial customers.

11. Upon information and belief, ATA Freight has more than 500 employees.

12. ATA Freight employed Plaintiff as an Operations Specialist.

13. The employment began on or about December 16, 2019.

14. A contract setting forth terms and conditions of the employment was signed by Esma Sahin, General Manager, Americas, ATA Freight Line, Ltd, and Ms. Brito. The date on that contract is December 6, 2019.

15. According to Section 2 of the contract, Ms. Brito was hired explicitly as an "at-will" employee of the company for no specified term and could be terminated with or without Cause immediately upon notice of termination.

16. Before her termination on March 16, 2020, Ms. Brito had passed the three month probationary period, and under Section 3(b) of the contract was qualified to received benefits and under Section 3(c) was entitled to two weeks vacation, holidays, 5 sick days, and other days of leave vested by that time under.

17. After work on Wednesday March 11, 2020, Ms. Brito texted her immediate supervisor Filiz Negron to inform her that she was calling out sick for Thursday March 12.

18. Ms. Brito also told her that she would be going to a doctor on Friday March 13 and would provide a note on when she would be able to return to work.

19. On March 13, Ms. Brito received a note from Dr. Adam Yuri Goldman, stating: "Pt. seen in office for flu-like symptoms. Pt asked to remain home. Return to work: 3/20/20".

20. On Monday, March 16, Ms. Brito emailed this note to her immediate supervisor Filiz Negron, a higher supervisor Sedat Tahtakesen, and the company's General Manager, Esma Sahin.

21. At 4:06pm that day she received an email back from Esma Sahin informing her that: "Your employment with ATA has been terminated effective immediately due to performance and absenteeism. If you have any questions, please contact me."

22. Ms. Brito emailed Ms. Sahin back twice on March 16, the latest at 8:42pm, writing: "I do not understand. I have sent over my doctors note about being ill. Is there a reason why you are not accepting this note? This is a shock and such short notice during these difficult

times especially of the corona virus spreading. Am I going to receive a severance package? Please advise."

23. Ms. Brito received no response from the Employer.

24. Ms. Brito was paid an annual salary of $45,000.

25. Ms. Brito regularly worked in excess of 40 hours per week.

26. Ms. Brito was improperly classified as an exempt worker under the Fair Labor Standards Act.

27. Ms. Brito on average worked 45 hours per week.

28. Plaintiff was misclassified as exempt, and wrongfully denied overtime pay.

29. Ms. Brito was one of two workers in the export department of the company under the direct supervision of Filiz Negron, who was in turn under the direction of supervisor Sedat Tahtakesen, and the company's General Manager, Esma Sahin.

30. Ms. Brito was a lower level employee who facilitated the day to day export operations of the company under the direct supervision of Filiz Negron.

31. Ms. Brito did not regularly supervise two or more other employees.

32. Ms. Brito did not have management as the primary duty of her position

33. Ms. Brito did not have genuine input into the job status of other employees (such as hiring, firing, promotions, or assignments).

34. Ms. Brito in order to do her job did not have to possess advanced knowledge in a field of science or learning, acquired by a prolonged course of specialized intellectual instruction.

35. Ms. Brito was **not** a highly compensated employee paid an annual salary of $107,432 or more.

36. Ms. Brito did not exercise discretion and judgment with the authority to make independent decisions which affect the business as a whole or a significant part of it.

### Count I: Violation of the Fair Labor Standard Act – Unpaid Overtime

37. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs above as if fully set forth within this cause of action.

38. ATA Freight's annual revenue exceeds $500,000.

39. At all relevant times, ATA Freight employed Plaintiff within the meaning of the FLSA.

40. At all relevant times, ATA Freight had a policy and practice of willfully refusing to pay its salary paid employees the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

41. As a result of ATA Freight's willful failure to compensate Plaintiff with overtime premium for work performed in excess of 40 hours in a workweek, ATA Freight has violated and continues to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104.

42. ATA Freight violated the Fair Labor Standards Act in that it did not properly compensate Plaintiff for the overtime hours she worked.

43. Due to ATA Freight's FLSA violations, Plaintiff is entitled to recover from ATA Freight her unpaid wages for the legally required amount of overtime compensation for all of the hours worked by her in excess of 40 in a workweek, actual and liquidated damages, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## Count II: Violation of New York Labor Law – Unpaid Overtime

44. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff an amount sufficient to comply with the New York State overtime law which requires that for all hours an employee works in excess of forty hours in a given week, employers pay employees one and one-half times the employees' regular hourly rate.

45. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the New York Labor Law §§ 2 and 651 and the regulations thereunder.

46. At all times relevant herein, Defendant failed to pay and willfully failed to pay Plaintiff for all overtime hours worked and at overtime rates.

47. Due to Defendant's NYLL violation, Plaintiff is entitled to recover from Defendant, her unpaid wages, maximum liquidated damages, prejudgment interest, and attorneys' fees and costs of the action, pursuant to NYLL § 663(1).

## Count III: Breach of Contract – Failure to Provide Benefits

48. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs above as if fully set forth within this cause of action.

49. The Contract between Plaintiff and Employer, under Section 3(c), provided Plaintiff with 2 weeks' vacation, 5 sick days and other days of leave, on condition she remain employed during her three-month probationary period (the "Condition Precedent").

50. Plaintiff satisfied the Condition Precedent by remaining employed during the three-month probation period.

51. On March 16, 2020, Employer terminated Plaintiff without paying for these vested benefits.

52. As a result of its breach of the Contract the Defendant is liable to Plaintiff for compensatory damages arising from the breach.

### Count IV: Failure to Accommodate Request for Medical Leave in Violation of NYSHRL and NYCHRL

53. Plaintiff repeats and alleges each and every allegation of the preceding paragraphs above as if fully set forth within this cause of action.

54. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.  Any and all other prerequisites to the filing of this suit have been met.

55. Under the NYSHRL and the NYCHRL, it is unlawful for an employer to fire or refuse to hire or otherwise discriminate against an employee because of a disability. Executive Law § 296 (1) (a); Administrative Code § 8-107(1)(a).

56. The medical condition for which Plaintiff requested leave, and for which she was seen by and treated by a physician qualifies as a disability as the term is defined in the NYSHRL, Executive Law § 292 (21), and NYCHRL, Administrative Code § 8-102(16)(a).

57. Plaintiff requested time off from work and provided medical documentation confirming that her physician had examined her in the physician's office, and that due to flu-like symptoms, the physician's instructions were for Ms. Brito to stay home.

58. The visit to the physician's office happened on Friday, March 13, 2020, which was the onset of the Covid-19 restrictions being imposed in New York City.

59. Plaintiff provided the medical note and requested to use her vested sick days.

60. Defendant's response was to terminate Plaintiff.

61. As a result of Defendants' unlawful discriminatory practice, Plaintiff has suffered mental anguish, emotional distress, loss of enjoyment of life, damages to her reputation, loss of job security, loss of employment, and loss of wages, incurring damages thereby.

### Count V: Retaliatory Termination

62. Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

63. Defendants violated the NYLL § 215(a)(3) when they terminated Plaintiff's employment in retaliation for requesting to take her earned sick days.

64. Defendants are there for liable to Plaintiff for damages under NYLL § 215(2)(a).

**WHEREFORE Plaintiff demands judgment against Employer, as set forth above and as specifically set forth below:**

a. an award of damages against Defendant, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

b. An award of damages against Defendant, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

c. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, reputational harm, and harm to professional reputation, in an amount to be determined at trial, plus interest;

d. An award of punitive damages in an amount to be determined at trial;

e. Prejudgment interest on all amounts due;

f.  An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' attorneys fees and costs to the fullest extent permitted by law;

g.  An injunction and order permanently restraining Defendant and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

h.  A declaratory judgment hat the actions, conduct and practices of Defendant complained of herein violations the laws of the State of New York and City of New York; and

i.  Such other and further relief as the Court may deem just and proper.

**IN THIS ACTION A JURY TRIAL IS BEING DEMANDED BY PLAINTIFF**

Dated: New York, NY
       June 29, 2020

**Respectfully Submitted,**

**LAW OFFICE OF MOHAMMED GANGAT**

Mohammed Gangat, Esq.,
675 Third Avenue, Suite 1810
New York, NY 10017
(718) 669-0714
mgangat@gangatpllc.com